**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA,
4343 W. Flagler Street, Suite 400
Miami, FL 33134, and

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
1331 F Street NW, Suite 900
Washington, DC 20004,

Plaintiffs,

v.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
500 12th Street SW
Washington, DC 20536,

TAE D. JOHNSON, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,
500 12th Street SW
Washington, DC 20536,

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,
700 Pennsylvania Avenue NW
Washington, DC 20408, and

DAVID S. FERRIERO, in his official capacity as Archivist of the United States,
700 Pennsylvania Avenue NW
Washington, DC 20408,

Defendants.

Civil Action No. __________

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs American Civil Liberties Union Foundation of Florida ("ACLU of Florida") and Citizens for Responsibility and Ethics in Washington ("CREW") bring this action for declaratory and injunctive relief against Defendants U.S. Immigration and Customs Enforcement

("ICE"), Tae D. Johnson, in his official capacity as Acting Director of ICE, the National Archives and Records Administration ("NARA"), and David S. Ferriero, in his official capacity as Archivist of the United States (the "Archivist"), under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, the Federal Records Act ("FRA"), 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, alleging as follows:[1]

## INTRODUCTION

1. This action challenges the failure of ICE and NARA to fulfill their nondiscretionary duties under the FRA to initiate an enforcement action through the Attorney General of the United States to prevent the unlawful destruction of federal records and to recover records unlawfully destroyed by an ICE detention contractor. Plaintiffs further challenge ICE's FRA guidelines and directives for its detention contractors as arbitrary, capricious, and contrary to law.

2. The federal records at issue are surveillance video files from Glades County Detention Center ("Glades"), a county jail in Moore Haven, Florida, that detains immigrants pursuant to a contract with ICE. Both ICE and NARA recognize that surveillance video from ICE contract detention facilities are federal records governed by the FRA. And NARA regulations make clear that destroying federal records subject to retention obligations—whether arising from federal contracts, agency preservation directives, pending public records requests, or litigation holds—constitutes an "unlawful destruction" of records that carries potential criminal penalties for culpable officials. *See* 36 C.F.R. § 1230.12.

[1] In this Complaint, references to "ICE" encompass both ICE and the Acting Director of ICE, and references to "NARA" encompass both NARA and the Archivist of the United States.

3. Nonetheless, Glades personnel have openly and repeatedly confirmed that the facility does not consider itself bound by the FRA and does not preserve its surveillance video in compliance with federal requirements. The facility instead deletes surveillance video every 90 days, claiming longer retention would be too expensive. This is despite an ICE contractual provision requiring Glades to retain federal records for at least three years, a January 2021 ICE directive instructing all Enforcement and Removal Operations ("ERO") detention facilities to retain all video surveillance data "until further notice," and pending public records requests and a records preservation notice from the ACLU of Florida concerning Glades surveillance video from 2020 and 2021.

4. ICE has known of Glades's defiance of its records preservation duties since at least February 2021. Yet it has taken no remedial action against the facility, in clear violation of its own FRA obligations.

5. The video being illegally deleted may contain key evidence needed to vindicate the rights of immigrants who were detained at Glades—a facility with conditions so inhumane that 17 members of Congress recently urged the Department of Homeland Security ("DHS") to "expeditiously" terminate its contract with and "close this facility." Video documenting the conditions at immigration detention facilities such as Glades must be preserved in compliance with federal requirements and, indeed, may be "necessary to protect the legal . . . rights . . . of persons directly affected by" the "activities" of ICE and its contractors. 44 U.S.C. § 3101.

6. This is not an isolated incident, but rather is emblematic of broader deficiencies in ICE's recordkeeping guidelines and directives for the more than 200 detention facilities the agency oversees nationwide. By failing to adopt and implement legally-compliant FRA policies

for its detention contractors, ICE is in violation of its duties to "safeguard records created, processed, or in the possession of a contractor or a non-Federal entity" and to "ensure that contractors performing Federal government agency functions create and maintain records that document these activities" in compliance with federal law. 36 C.F.R. § 1222.32.

7. On January 24, 2022, Plaintiffs submitted an administrative complaint requesting (1) that ICE and NARA comply with their nondiscretionary duties to initiate an enforcement action through the Attorney General to recover surveillance video unlawfully deleted by Glades and to ensure proper retention of the video going forward; and (2) that ICE issue records management guidance to all ERO detention facilities to ensure the facilities' compliance with the FRA, its implementing regulations, and NARA directives. Plaintiffs requested a response by March 10, 2022. To date, Defendants have failed to take the requested actions.

8. Accordingly, Plaintiffs respectfully request that the Court (1) order ICE and NARA to immediately initiate an enforcement action through the Attorney General to halt Glades's FRA violations and seek the recovery of any federal records unlawfully destroyed, and (2) hold unlawful and set aside ICE's FRA guidelines and directives for its detention contractors as arbitrary, capricious, and contrary to law.

**JURISDICTION AND VENUE**

9. This action arises under the APA, 5 U.S.C. §§ 701, *et seq.*, the FRA, 44 U.S.C. §§ 3301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* Because this action arises under federal law, this Court has jurisdiction under 28 U.S.C. § 1331.

10. Venue lies in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

11. Plaintiff ACLU of Florida is a nonprofit, nonpartisan organization organized under section 501(c)(3) of the Internal Revenue Code committed to protecting, defending, strengthening, and promoting the constitutional rights and liberties of all people in Florida. As part of its immigrants' rights work, the ACLU of Florida routinely seeks records from ICE contract detention facilities through Freedom of Information Act ("FOIA") requests, state public records requests, and civil discovery. The ACLU of Florida uses these records in various ways, including to seek legal relief on behalf of detained immigrants and to inform the public about the conditions in ICE detention facilities.

12. As detailed further below, on November 18, 2021, the ACLU of Florida submitted a FOIA request to Defendant ICE and a state public records request to the Glades County Sheriff's Office seeking certain video surveillance footage from Glades. *See* Ex. A (Pls.' Admin. Compl.), attached thereto as Exs. 3 & 4. The ACLU of Florida also submitted a preservation hold letter to the Glades County Sheriff's Office on November 16, 2021, requesting that Glades preserve certain evidence, including video surveillance footage. Ex. B. The ACLU of Florida has not received the requested video surveillance footage and, as detailed below, has obtained evidence that Glades deletes its surveillance footage every 90 days. The ACLU of Florida is seeking this video because it could contain important evidence to substantiate complaints about the abusive conditions of confinement for ICE detainees at Glades, including complaints by the ACLU of Florida's clients. Glades's unlawful destruction of these records directly impedes the ACLU of Florida's ability to investigate and pursue relief for individuals

who have suffered harm while in ICE detention at Glades, and impedes the ACLU of Florida's informational rights under FOIA and Florida's public records law.

13. Plaintiff CREW is a nonprofit, nonpartisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring integrity in government. CREW seeks to empower citizens to have an influential voice in government decisionmaking through the dissemination of information about public officials and their actions. To further its mission of promoting government transparency and accountability, CREW routinely files FOIA requests with ICE and other agencies; disseminates the documents it receives through FOIA requests on its website, www.citizensforethics.org, and social media; and uses the documents in preparing reports, complaints, litigation, blog posts, and other publications widely disseminated to the public. Given its status as a frequent FOIA requester of ICE records, CREW has a strong operational interest in ICE's compliance with its recordkeeping obligations under the FRA. The unlawful destruction of federal records relevant to CREW's work impedes its ability to fulfill its mission and its informational rights under FOIA.

14. Defendant ICE is an agency within the meaning of the APA, 5 U.S.C. § 551(1), and the FRA, 44 U.S.C. § 2901(14). ICE operates under the supervision and direction of the ICE Director.

15. Defendant Tae D. Johnson is the Acting Director of ICE and is sued in his official capacity only.

16. Defendant NARA is an agency within the meaning of the APA, 5 U.S.C. § 551(1), and the FRA, 44 U.S.C. § 2901(14). NARA operates under the supervision and direction of the Archivist of the United States.

17. Defendant David S. Ferriero is the Archivist of the United States and is sued in his official capacity only.

## LEGAL FRAMEWORK

### I. The Federal Records Act

18. The FRA is a collection of statutes governing the creation, management, and disposal of federal records. *See* 44 U.S.C. §§ 2101, *et seq.*; §§ 2901, *et seq.*; §§ 3101, *et seq.*; and §§ 3301, *et seq*. It ensures the "[a]ccurate and complete documentation of the policies and transactions of the Federal Government." 44 U.S.C. § 2902(1).

19. The FRA requires federal agencies to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

20. The FRA further requires agencies to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." 44 U.S.C. § 3102. The agency's records management program "shall provide for," among other things, "effective controls over the creation and over the maintenance and use of records in the conduct of current business." *Id.* § 3102(1).

21. NARA regulations require agencies to ensure appropriate preservation of federal records in the possession of contractors and other non-federal entities. "Agency officials responsible for administering contracts must safeguard records created, processed, or in the possession of a contractor or a non-Federal entity by," among other things, ensuring that (1) "contractors performing Federal government agency functions create and maintain records that document these activities," and (2) "[a]ll records created for Government use and delivered to, or under the legal control of, the Government [are] . . . managed in accordance with Federal law," including the FRA and its implementing regulations. 36 C.F.R. §§ 1222.32(a); *see also id.* § 1222.32(b) ("All data created for Government use and delivered to, or falling under the legal control of, the Government are Federal records subject to" the FRA and other statutes and "must be managed and scheduled for disposition only as provided in" NARA regulations).

22. NARA has issued standardized language designed "to be included as an agency-specific term and condition in Federal contracts for a variety of services and products" in order to provide "clear legal obligations describing how the contract employees must handle Federal records." NARA, *Records Management Language for Contracts*, https://perma.cc/3Z6W-SLY4.

23. Federal records cannot be destroyed without NARA's approval. *See* 44 U.S.C. § 3314; *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999). NARA can do so by approving either a schedule governing the disposition of specified agency records, *see* 44 U.S.C. §§ 3303a(a), or a general records schedule listing types of records held by multiple agencies, *id.* 3303a(d).

24. "To prevent the unlawful destruction or removal of records, the FRA creates a 'system of administrative enforcement.'" *Am. Oversight v. U.S. Dep't of Vet. Affs.*, 498 F. Supp.

3d 145, 148 (D.D.C. 2020) (quoting *Armstrong v. Bush*, 924 F.2d 282, 284 (D.C. Cir. 1991)). If an agency head becomes aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," the agency head "shall notify the Archivist" and "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery" of those records. 44 U.S.C. § 3106(a); *see* 36 C.F.R. § 1230.14 (detailing how agencies "must report promptly any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of that agency to NARA").

25. If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action . . . or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b).

26. The FRA's enforcement scheme reflects Congress's judgment that "marshalling the law enforcement authority of the United States [is] a key weapon in assuring record preservation and recovery." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016).

27. Under NARA regulations, "[u]nlawful or accidental destruction (also called unauthorized destruction) means disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record (other than court-ordered disposal under § 1226.14(d) of this subchapter); and disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records." 36 C.F.R. § 1230.3(b). "The penalties for the unlawful or accidental removal, defacing, alteration, or

destruction of Federal records or the attempt to do so, include a fine, imprisonment, or both." *Id.* § 1230.12 (citing 18 U.S.C. §§ 641, 2071).

## II. The Administrative Procedure Act

28. The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

29. The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

30. A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* §§ 706(1), (2)(A).

31. In the FRA context, the APA authorizes judicial review of claims alleging violations of an agency's nondiscretionary duty to initiate an enforcement action through the Attorney General, *Judicial Watch*, 844 F.3d at 954, and claims challenging an agency's recordkeeping guidelines and directives as arbitrary, capricious, or contrary to law, *Armstrong*, 924 F.2d at 297.

## FACTUAL BACKGROUND

### I. Glades's Violent and Inhumane Treatment of Immigrants Detained in ICE Custody

32. Glades has detained immigrants pursuant to an intergovernmental service agreement ("IGSA") with ICE since May 2007. *See* ICE IGSA with Glades County, Florida, https://perma.cc/3SZP-P8Z7.

33. According to "advocacy, legal, and medical organizations across the country," Glades has "exhibited some of the most egregious cases of the systemic inhumanity that plagues the migrant detention system." Letter from Congresswoman Debbie Wasserman Schultz and Seven Members of Congress to Secretary of Homeland Security Alejandro Mayorkas, July 22, 2021, https://perma.cc/A336-PVH8. And conditions there have only worsened since the onset of the COVID-19 pandemic, as documented in numerous civil rights complaints filed by immigrant rights organizations with DHS's Office of Civil Rights and Civil Liberties ("CRCL") and Office of Inspector General ("OIG").

34. For example, a February 2021 complaint described testimony from 25 individuals currently or formerly detained at Glades detailing patterns of medical abuse; lack of soap, hygiene products, sanitation, and personal protective equipment; transfers between facilities without appropriate quarantine or medical screening; failures to follow court orders to release individuals at high risk for severe illness or death; retaliation for peaceful protest and public reporting; use of toxic chemical spray in enclosed spaces; and hospitalizations and death related to COVID-19. Letter from Nine Organizations to OIG and CRCL, Feb. 22, 2021, https://perma.cc/RS5Q-DLQ9. Additional CRCL complaints filed since February indicate these conditions have not improved.

35. An August 2021 complaint recounted pervasive abuse and mistreatment of immigrant women detained at Glades, who reported being sprayed with a toxic chemical that poses a risk of infertility and exacerbates the spread of COVID-19, sexual voyeurism by male guards, unannounced entries in violation of Prison Rape Elimination Act abuse prevention policies, sexually abusive behavior by medical staff, and other circumstances "creating a hostile and unsafe environment for women detained" at the facility. Letter from 23 Organizations to OIG and CRCL, Aug. 26, 2021, https://perma.cc/S9XS-L9AA.

36. An October 2021 complaint detailed a pattern of racialized violence against Black immigrants detained at Glades, many of whom described being beaten, pepper sprayed, and placed in solitary confinement. Letter from 10 Organizations to OIG and CRCL, Oct. 25, 2021, https://perma.cc/YY3R-G8GU. The complaint noted "none of these cases ha[ve] been resolved" to date and, "in some cases, efforts to resolve them have resulted in retaliation for those detained." *Id.*

37. Citing these ongoing "reports of alleged medical neglect, excessive use of force, and other violations of human dignity," eight members of Congress called on DHS in July 2021 to terminate ICE's IGSA with Glades and close the facility. Wasserman Schultz Letter, July 22, 2021.

38. In February 2022, 17 members of Congress wrote "again to request that [DHS] move expeditiously to close" Glades. Letter from Congresswoman Debbie Wasserman Schultz and 16 Members of Congress to Secretary of Homeland Security Alejandro Mayorkas, Feb. 1, 2022, https://bit.ly/3qGpoho. The letter noted "[r]eports of abuse of both local residents detained and those transferred in from across the country have unfortunately escalated" since the July

2021 congressional letter. *Id.* Because the "situation is not improving," the members urged DHS to "immediately terminate its contract with Glades County and close this facility." *Id.*

39. On March 25, 2022, ICE announced it would limit its use of Glades, citing "persistent and ongoing concerns related to the provision of detainee medical care." Press Release, *ICE to close Etowah Detention Center*, ICE, Mar. 25, 2022, https://perma.cc/Z5SL-V57Y. The agency stated it "will not extend the guaranteed minimum beds provision of" ICE's agreement with Glades and that "[a]ny future use of the facility will be dependent on fully addressing any conditions that do not meet detention standards." *Id.*

40. Although ICE is not currently detaining immigrants at Glades, it has not terminated its contract with the facility and has left open the possibility of detaining immigrants there in the future. *See* Syra Ortiz-Blanes and Michael Wilner, *Feds will limit use of Glades migrant detention center in Florida after complaints*, Miami Herald, Mar. 25, 2022, https://www.miamiherald.com/news/local/immigration/article259766725.html.

## II. Glades's Deletion of Facility Surveillance Video

41. In the spring of 2021, Glades released documents in response to a public records request—which were later shared with Plaintiffs—revealing that the facility was deleting surveillance video every 90 days despite federal contractual requirements and directives to retain the video for longer periods. *See* Ex. A (Pls.' Admin. Compl.), attached thereto as Ex. 2 (Feb. 1, 2021 Email Thread with ICE and Glades Officials).

42. The documents include an email thread that begins with a January 29, 2021 memo from ERO's Acting Assistant Director for Field Operations to all ERO Field Office Directors and Deputy Field Office Directors, with the subject "Reminder: Detention Facility Data

Request." *Id.* The memo noted NARA had requested ICE "detention facility video surveillance data" as part of an "ICE retention policy working group." *Id.* It continued: "In furtherance of NARA's request and the working group's mission, [the Assistant Director for] Field Operations directs the [Areas of Responsibility] to notify all ERO detention facilities[] that no later than Tuesday, February 2, 2021, they are to retain **all** video surveillance data, as described in the December 2, 2020 Detention Facility Data Request broadcast[,] until further notice." *Id.*

43. On February 1, 2021, the Deputy Field Office Director for ERO's Miami Field Office forwarded ERO's January 29, 2021 preservation directive to several ICE officials, stating: "Please see Tasking below requiring us to notify all ERO detention facilities, that no later than Tuesday, February 2, 2021, they are to retain **all** video surveillance data in accordance with the National Archives and Records Administration." *Id.* The email included excerpts from ICE detention facility contracts mandating facilities' compliance with federal records management statutes, regulations, and guidelines from NARA, and requiring preservation of all records "related to contract performance . . . for three years." *Id.*

44. An ICE contracting officer from ERO's Miami Field Office forwarded the email thread to two Glades officials, stating "Per the Field Office Director and ICE HQ I'm notifying you of the below directive regarding video retention data as per [NARA]. We need to know as soon as possible if your facility will have any issues in meeting this requirement." *Id.* Glades Detention Operations Commander Chad Schipansky responded to the ICE official as follows:

> Just following up with you in reference to our conversation. We currently do not have anything set up that would retain that much information for that long of a period of time. Our capabilities are currently at 90 days retention of video records. In speaking with our IT person that would require an enormous amount of added hard drives at an astronomical cost. Some quick calculations would put the cost estimate at around 500 K.

*Id.*

45. On November 16, 2021, the ACLU of Florida sent Glades a Notice of Investigation and Request to Preserve Evidence. Ex. B. The letter notified Glades of an "ongoing investigation of complaints" at the facility regarding medical neglect, failure to provide medication, and the unwarranted use of force, and requested that Glades retain certain "video footage" and other records from January 1, 2021 to the present. *Id.*

46. On November 18, 2021, the ACLU of Florida submitted a public records request to the Glades County Sheriff's Office and a FOIA request to ICE, seeking Glades's surveillance video footage from specified date ranges in 2020 and 2021. Ex. A (Pls.' Admin. Compl.), attached thereto as Ex. 3 (Nov. 18, 2021 ACLU of Florida Public Records Request to Glades), and Ex. 4 (Nov. 18, 2021 ACLU of Florida FOIA Request to ICE).

47. On December 3, 2021, counsel from the ACLU of Florida appeared at Glades for a legal visit and had a discussion with Commander Schipansky. During that conversation, Schipansky stated unequivocally that Glades only maintains surveillance video for 90 days. He did not describe any efforts to preserve the video for longer periods in accordance with the contractual requirement to preserve records relating to contract performance for three years, ICE's January 29, 2021 preservation directive, or the ACLU of Florida's pending FOIA, public records, and records preservation requests.

48. Despite being aware of Glades's actions since at least February 2021, ERO's Miami Field Office did not report the matter to NARA or has otherwise taken no action to stop the facility from prematurely deleting surveillance video.

## III. ICE's Deficient FRA Guidelines and Directives for its Detention Contractors

49. The practices at Glades are emblematic of ICE's broader failure to implement federal record retention requirements at the more than 200 detention facilities it oversees across the country.

50. When ICE was created in 2003, "it inherited an immigration detention system that held about 20,000 people per day." ACLU Research Report, *Justice-Free Zones*, at 4, Apr. 30, 2020, https://perma.cc/7CU8-JA9Y. That system has since expanded dramatically into a "sprawling network of more than 200 detention centers nationwide," most of which are operated by "private prison corporations and, in some cases, by local jails" such as Glades. *Id.*

51. Because ICE's detention contractors are performing federal functions at a massive scale, there is a strong need for rigorous oversight by ICE to ensure its contractors are acting in accordance with federal law and ICE detention standards. To enable that oversight and to protect the legal rights of immigrants detained in ICE custody, strict adherence to federal recordkeeping requirements is paramount.

52. ICE, however, does not provide uniform records management guidelines or directives to its detention contractors to ensure compliance with the FRA, its implementing regulations, and NARA directives. ICE IGSAs and detention contracts frequently lack NARA's recommended records management language for federal contracts or any comparable language. *See, e.g.*, ICE IGSA with Alamance County, North Carolina, and contract amendments, https://perma.cc/YY9H-F72Q; ICE IGSA with Adams County, Mississippi, and contract amendments, https://perma.cc/5RRL-EN3T.

53. ICE's deficient FRA guidelines and directives have had real consequences, at

Glades and beyond. For instance, a recent OIG report auditing the use of solitary confinement (or "segregation") at ICE detention facilities found that dozens of detention case files "were destroyed before NARA's minimum retention requirements" due to ICE's deficient policies. DHS OIG, *ICE Needs to Improve its Oversight of Segregation Use in Detention Facilities*, OIG-22-01, at 7, Oct. 13, 2021, https://perma.cc/GU7P-FR4H. Since the OIG's findings were based on a mere "statistical sample" of detention case files, *id.* at 7, 9, 14, they likely reflect only a small fraction of FRA violations occurring at ICE detention facilities.

54. The OIG made clear these were not isolated instances of non-compliance, but reflect broader deficiencies in agency policy. The OIG explained that ICE's Performance-Based National Detention Standards states that field offices need only maintain detention files for 18 months and "does not reference" applicable NARA retention requirements for longer preservation. *Id.* at 9. This deficiency has, in turn, "caused confusion" over the governing retention requirements for federal records possessed by ICE contractors. *Id.* The OIG stressed that without "clear record retention guidance" from ICE, facilities may continue to "destroy detention files before NARA's retention period ends" and thus "prevent ICE, as well as external oversight organizations, from investigating" potential abuse in ICE detention. *Id.*

55. ICE concurred with the OIG's recommendations, but did not commit to any immediate corrective action to provide legally-compliant records management guidance to ERO detention facilities. *Id.* at 17-18.

## IV. Plaintiffs' Administrative Complaint and Subsequent Developments

56. On January 24, 2022, Plaintiffs submitted an administrative complaint to ICE and NARA seeking "prompt remedial action" regarding Glades's ongoing deletion of surveillance

video. *See* Ex. A. Among other things, Plaintiffs requested that (1) ICE and NARA comply with their nondiscretionary duties to initiate an enforcement action through the Attorney General to recover surveillance video unlawfully deleted by Glades and to ensure proper retention of the video going forward; and (2) ICE issue records management guidance to all ERO detention facilities to ensure the facilities' compliance with the FRA, its implementing regulations, and NARA directives. *Id.* at 8. Plaintiffs requested a response from ICE by March 10, 2022 to confirm that these steps were taken. *Id.*

57. Following Plaintiffs' administrative complaint, Glades personnel twice confirmed that the facility continues to delete surveillance video every 90 days in violation of federal record retention requirements.

58. First, on January 27, 2022, a National Public Radio affiliate in southwest Florida reported that it contacted the Glades County Sheriff's Office seeking a comment on Plaintiffs' administrative complaint. *See* Cary Barbor, *Glades Detention Center accused of destroying video evidence*, WGCU, Jan. 27, 2022, https://perma.cc/F7P7-XLLV. When confronted with Plaintiffs' allegations, a Glades officer reportedly stated, "We keep our video to the State of Florida's standards . . . We are not mandated to keep it to federal government standards." *Id.* The officer incorrectly claimed that Glades is not subject to federal retention requirements even though it is an ICE contractor. *Id.*

59. Second, on February 17, 2022, Commander Schipansky from Glades emailed the ACLU of Florida several "questions for clarification" regarding its November 18, 2021 public records request for facility surveillance video. *See* Ex. C. In response to an item of the request

seeking confirmation that Glades is preserving surveillance video footage in compliance with federal requirements, Commander Schipansky wrote that "Video retention is at 90 days." *Id.*

60. On February 17, 2022, NARA sent ICE a letter regarding Plaintiffs' administrative complaint and opened an "unauthorized disposition" case for the matter. *See* Ex. D; NARA, *Unauthorized Disposition of Federal Records*, ICE, Case No. UD-2022-0019, https://perma.cc/8PHN-XB69. NARA's letter revealed that in July 2020, "NARA directed ICE to cease destruction of all video surveillance records pending approval of a records disposition schedule for these records." Ex. D. This request was prompted by a prior unauthorized disposition case, UD-2020-0009. *Id.* In that case, an ICE detention center in New Mexico deleted surveillance footage of the final moments of Roxsana Hernandez, a transgender Honduran woman who died in ICE custody in May 2018. *See* Letter from NARA to ICE re UD-2020-00019, Nov. 22, 2019, https://perma.cc/XS55-4LZ6; Hannah Knowles, *ICE detention center may have allowed video to be deleted after detainee's death, lawyers say*, Wash. Post, Oct. 25, 2019, https://perma.cc/VAM3-4H3E.

61. It took ICE *six months* to relay NARA's July 2020 preservation directive to ERO detention facilities, with the agency finally doing so in January 2021. Ex. D. In September 2021, NARA approved a "records disposition schedule" authorizing the disposal of "non-evidentiary video surveillance records," pursuant to which certain ICE facility surveillance video may be lawfully destroyed. *Id.* However, according to its February 17, 2022 letter, NARA is "concerned about any non-evidentiary video surveillance records" from ICE detention facilities "that may have been destroyed during the period between July 2020 and September 2021." *Id.* ACLU of

Florida's public records request to Glades seeks surveillance video footage from this period. *See* Ex. A, attached thereto as Ex. 3.

62. NARA's February 17, 2022 letter requested that ICE provide a report within 30 calendar days addressing Plaintiffs' allegations, including a description of any unlawful destruction of records, safeguards established to prevent further loss of documentation, and details of any actions taken to salvage, retrieve, or reconstruct the records. Ex. D. There is no indication that ICE has issued this report, nor have Defendants provided any report to Plaintiffs.

63. On information and belief, neither ICE nor NARA have initiated an enforcement action through the Attorney General to address Glades's unlawful deletion of surveillance video. Nor has ICE issued records management guidance to ERO detention facilities to ensure the facilities' compliance with the FRA, its implementing regulations, and NARA directives.

## PLAINTIFFS' CLAIMS FOR RELIEF

### COUNT I
### Defendants' Failure to Initiate an FRA Enforcement Action through the Attorney General (Administrative Procedure Act, 5 U.S.C. §§ 706(1), 706(2)(A))

64. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

65. The FRA imposes on ICE a nondiscretionary duty to initiate an enforcement action through the Attorney General when the agency "knows or has reason to believe" of any unlawful destruction of federal records within the agency's legal ownership, custody, or control. 44 U.S.C. § 3106(a).

66. The FRA imposes on NARA a nondiscretionary duty to (1) request that the Attorney General initiate an enforcement action when a federal agency fails to initiate such an action "within a reasonable period of time after being notified" of any unlawful destruction of

federal records within the agency's legal ownership, custody, or control; and (2) notify Congress of the request. 44 U.S.C. § 3106(b).

67. Glades has deleted, and continues to delete, surveillance video every 90 days in violation of the FRA, NARA regulations and directives, and ICE directives and contractual requirements.

68. The surveillance video Glades has unlawfully deleted, and continues to unlawfully delete, are federal records within ICE's legal ownership, custody, or control.

69. ICE has been aware of Glades's unlawful deletion of surveillance video since at least February 2021.

70. By complaint dated January 24, 2022, Plaintiffs reported Glades's unlawful deletion of surveillance video to ICE and NARA and requested that the agencies promptly initiate an enforcement action through the Attorney General pursuant to their nondiscretionary duties under the FRA.

71. On information and belief, neither ICE nor NARA have initiated an enforcement action through the Attorney General in compliance with their nondiscretionary duties.

72. The failure of ICE and NARA to initiate an enforcement action through the Attorney General is "agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A).

**COUNT II**
**Defendant ICE's Deficient Recordkeeping Guidelines and Directives for its Detention Contractors**
**(Administrative Procedure Act, 5 U.S.C. §§ 701(2)(A), 701(1))**

73. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

74. The FRA requires agencies to "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," 44 U.S.C. § 3102, which must provide "effective controls over the creation and over the maintenance and use of records in the conduct of current business," *id.* § 3102(1).

75. NARA regulations require agencies to "safeguard records created, processed, or in the possession of a contractor or a non-Federal entity by," among other things, ensuring that (1) "contractors performing Federal government agency functions create and maintain records that document these activities," and (2) "[a]ll records created for Government use and delivered to, or under the legal control of, the Government [are] . . . managed in accordance with Federal law," including the FRA and its implementing regulations. 36 C.F.R. § 1222.32(a).

76. In evaluating the adequacy of an agency's recordkeeping guidelines and directives, courts examine "the total 'guidance' given to [agency] staff [and contractors] regarding their recordkeeping responsibilities," including both formal policies and any "informal, supplementary guidance." *Armstrong*, 924 F.2d at 297.

77. ICE's recordkeeping guidelines and directives for its detention contractors fail to inform contractors of their records preservation obligations under the FRA, its implementing regulations, and NARA directives.

78. By failing to provide such guidance, ICE is in violation of its nondiscretionary duty to "safeguard records created, processed, or in the possession of a contractor or a non-Federal entity." 36 C.F.R. § 1222.32(a).

79. The deficiencies in ICE's recordkeeping guidelines and directives for its detention contractors render the guidelines and directives "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

80. ICE's failure to adopt and implement FRA-compliant recordkeeping guidelines and directives is "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Declare that surveillance video from Glades from any period in which the facility was detaining immigrants on behalf of ICE are federal records subject to the FRA and its implementing regulations;

2. Declare that Glades's deletion of surveillance video without NARA authorization constitutes an unlawful destruction of federal records in violation of the FRA and its implementing regulations;

3. Declare that Defendants are in violation of their nondiscretionary duties under the FRA to initiate an enforcement action through the Attorney General to address Glades's unlawful destruction of federal records;

4. Order Defendants to initiate an enforcement action through the Attorney General to address Glades's unlawful destruction of federal records;

5. Declare that ICE's recordkeeping guidelines and directives for its detention contractors are arbitrary, capricious, and contrary to law insofar as they are non-compliant with the FRA and its implementing regulations.

6. Vacate ICE's recordkeeping guidelines and directives for its detention contractors insofar as they are non-compliant with the FRA and its implementing regulations;

7. Declare that ICE has failed to adopt recordkeeping guidelines and directives for its detention contractors that comply with the FRA and its implementing regulations;

8. Order ICE to adopt recordkeeping guidelines and directives for its detention contractors that comply with the FRA and its implementing regulations;

9. Order ICE to preserve surveillance video from Glades while this litigation is pending;

10. Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

11. Grant any other relief the Court deems appropriate.

Date: April 25, 2022

Respectfully submitted,

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and
Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org

Katherine H. Blankenship (FL Bar No. 1031234)
Daniel B. Tilley (FL Bar No. 102882)
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2700
kblankenship@aclufl.org
Dtilley@aclufl.org
**pro hac vice application forthcoming*

Amien Kacou (FL Bar No. 44302)
ACLU Foundation of Florida, Inc.

4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390
akacou@aclufl.org
*pro hac vice application forthcoming*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, DC 20005
Tel: (202) 601-4266
aspitzer@acludc.org