**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA, and CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | Civil Action No. 22-cv-1129-CJN |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. The Federal Records Act ........ 3

II. Factual Background ........ 6

III. Plaintiffs' Administrative Complaint and This Suit ........ 8

LEGAL STANDARD ........ 11

ARGUMENT ........ 11

I. Plaintiffs Have Article III Standing to Assert Count I. ........ 11

A. The Complaint Plausibly Alleges that Defendants' Initiation of the Requested DOJ Enforcement Action to Prevent the Destruction of Records and Restore Deleted Records Would Redress Plaintiffs' Injuries.. ........ 12

B. Defendants Are Prematurely Seeking a Fact-Based Adjudication on the Merits Under the Guise of Article III Redressability. ........ 15

II. Count I States a Valid APA-FRA Claim Based on Defendants' Violation of Their Nondiscretionary Duties to Initiate a DOJ Enforcement Action to Redress Glades's Unlawful Destruction of Records. ........ 20

A. D.C. Circuit Precedent Forecloses Defendants' Argument. ........ 20

B. Defendants' Duty to Initiate a DOJ Enforcement Action for "Other Redress" Encompasses Redress for the Unlawful Destruction of Federal Records. ........ 22

CONCLUSION ........ 27

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) .......... 11

*Am. Oversight v. U.S. Dep't of Vet. Affs.*, 498 F. Supp. 3d 145 (D.D.C. 2020) .......... 2, 4, 16, 17

*Armstrong v. Bush ("Armstrong I")*, 924 F.2d 282 (D.C. Cir. 1991).......... passim

*Armstrong v. EOP ("Armstrong II")*, 1 F.3d 1274 (D.C. Cir. 1993) .......... 21

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) .......... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 11

*Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) .......... 11

*Barker v. Conroy*, 921 F.3d 1118 (D.C. Cir. 2019) .......... 11

*Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230 (D.D.C. 2018).......... 19

*Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201 (D.D.C. 2018) .......... passim

*CREW v. DHS*, 527 F. Supp. 2d 101 (D.D.C. 2007).......... 21

*CREW v. EOP*, 587 F. Supp. 2d 48 (D.D.C. 2008).......... 12, 13, 21

*CREW v. SEC*, 858 F. Supp. 2d 51 (D.D.C. 2012) .......... 12, 13

*CREW v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013) .......... 26, 27

*Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497 (D.C. Cir. 2020) .......... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167 (2000) .......... 15

*Gundy v. United States*, 139 S. Ct. 2116 (2019) .......... 23, 27

*Hardaway v. D.C. Hous. Auth.,* 843 F.3d 973 (D.C. Cir. 2016).......... 15

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192 (D.C. Cir. 1992) .......... 16, 17

*Judicial Watch, Inc. v. FBI*, 2019 WL 4194501 (D.D.C. Sept. 4, 2019).......... 12

*Judicial Watch, Inc. v. Kerry*, 844 F.3d 952 (D.C. Cir. 2016).......... passim

*Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3 (D.C. Cir. 2018) .......... 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 12, 15

*Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015) .......... 12, 13

*Pub. Citizen v. Carlin*, 184 F.3d 900 (D.C. Cir. 1999) .......... 4

*Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1 (D.D.C. 1997) .......... 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 11

*Torres v. Lynch*, 578 U.S. 452 (2016) .......... 25

*Welborn v. IRS*, 218 F. Supp. 3d 64 (D.D.C. 2016) .......... 17

**Statutes**

18 U.S.C. § 641 .......... 5

18 U.S.C. § 2071 .......... 5

44 U.S.C. § 2902 .......... 3, 23

44 U.S.C. § 2902(1) .......... 3, 23

44 U.S.C. § 2905 .......... 24

44 U.S.C. § 2905(a) .......... 5

44 U.S.C. § 3101 .......... 3, 4, 23

44 U.S.C. § 3105 .......... 23

44 U.S.C. § 3106 .......... passim

44 U.S.C. § 3106(a) .......... 5, 24

44 U.S.C. § 3106(b) .......... 5, 24

44 U.S.C. § 3314 .......... 4

44 U.S.C. § 3303a(a) .......... 4

44 U.S.C. § 3303a(d) .......... 4

**Regulations**

36 C.F.R. § 1222.32 .......... 4, 5

36 C.F.R. § 1222.32(a) .......... 4

36 C.F.R. § 1222.32(b) .......... 4

36 C.F.R. § 1230.3(b) .......... 5

36 C.F.R. § 1230.10(a) .......... 5

36 C.F.R. § 1230.12 .......... 5

**Legislative History**

H.R. Conf. Rep. No. 98-1124 .......... 26

**Other**

NARA Directive 1463, *Unauthorized Destruction or Removal of Records in the Legal or Physical Custody of Federal Agencies*, Dec. 20, 2016, https://perma.cc/89LC-AJJB .......... 26

Plaintiffs American Civil Liberties Union Foundation of Florida ("ACLU of Florida") and Citizens for Responsibility and Ethics in Washington ("CREW") respectfully submit this opposition to the motion to dismiss of Defendants U.S. Immigration and Customs Enforcement ("ICE"), Tae D. Johnson, in his official capacity as Acting Director of ICE, the National Archives and Records Administration ("NARA"), and Debra S. Wall, in her official capacity as Acting Archivist of the United States (the "Archivist"), in this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Federal Records Act ("FRA"), 44 U.S.C. §§ 3301, *et seq.*[1]

## INTRODUCTION

This suit challenges Defendants' failure to initiate an enforcement action through the Attorney General to prevent the unlawful destruction of federal records and to recover records destroyed by Glades County Detention Center ("Glades"), an ICE contractor in Moore Haven, Florida. The FRA enforcement provisions invoked by Plaintiffs are mandatory, not optional: they "'*require[]* [an] agency head and [the] Archivist to take enforcement action' through the Attorney General whenever they became aware of records being unlawfully removed or destroyed" and "leave *no* discretion [for the agency] to determine which cases to pursue." *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016) (quoting *Armstrong v. Bush ("Armstrong I")*, 924 F.2d 282, 295 (D.C. Cir. 1991)).

[1] In this opposition, "ICE" refers both to ICE and the Acting Director of ICE, and "NARA" refers both to NARA and the Acting Archivist of the United States.

The factual basis for a Department of Justice ("DOJ") referral here is undisputed. Defendants concede Glades unlawfully deleted federal records—specifically, surveillance video recordings—for well over a year. They further concede that ICE, despite knowing about this issue since at least February 2021, took no steps to address Glades's FRA violations until Plaintiffs highlighted them in a January 2022 administrative complaint. And Defendants have provided recent communications between ICE and Glades showing that the facility continues to resist record remediation efforts and federal retention requirements, underscoring the need for DOJ enforcement.

Defendants have nonetheless refused to comply with their duty to make a DOJ referral, prompting Plaintiffs to file this suit. They now move to dismiss Count I of the Complaint for lack of Article III redressability and for failure to state a claim. Both arguments should be rejected.

First, the Complaint plausibly alleges a substantial likelihood that initiation of the requested DOJ enforcement action—"the only relief provided by the Federal Records Act," *Judicial Watch*, 844 F.3d at 955—would redress Plaintiffs' Article III injuries. Defendants' contrary arguments inflate Plaintiffs' pleading burden and disregard that the Complaint seeks redress both to prevent the destruction of records *and* to restore deleted records. Defendants also prematurely seek a fact-based adjudication on the merits, couched as a redressability challenge, regarding whether deleted records are "actually recoverable." But courts in this Circuit have rejected similar early attempts to dismiss APA-FRA cases on purported justiciability grounds. *E.g.*, *id.* at 955–56; *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 205–209 (D.D.C. 2018); *Am. Oversight v. U.S. Dep't of Vet. Affs.*, 498 F. Supp. 3d 145, 155 (D.D.C. 2020). This Court should do the same.

Count I also states a valid APA-FRA claim under *Armstrong I* and its progeny. Defendants incorrectly argue that the FRA only requires a DOJ referral when agency records are unlawfully *removed* from an agency's custody, not when they are unlawfully *destroyed*. But that argument is foreclosed by three decades of binding D.C. Circuit precedent, the FRA's text and legislative history, and NARA's own regulatory directive construing the statute.

The FRA's enforcement scheme reflects Congress's "belief that marshalling the law enforcement authority of the United States [is] a key weapon in assuring record preservation and recovery." *Judicial Watch*, 844 F.3d at 956. Accepting Defendants' arguments would eviscerate this "key weapon," "flip *Armstrong [I]* on its head," and "carve out enormous agency discretion" from the FRA's "mandatory enforcement provisions." *Id.* Defendants' motion to dismiss Count I of the Complaint should be denied.[2]

## BACKGROUND

### I. The Federal Records Act

The FRA governs the creation, management, preservation, and disposal of federal records. *See* 44 U.S.C. §§ 2101, *et seq.*; §§ 2901, *et seq.*; §§ 3101, *et seq.*; and §§ 3301, *et seq*. It ensures the "[a]ccurate and complete documentation of the policies and transactions of the Federal Government." 44 U.S.C. § 2902(1). To that end, the FRA requires federal agencies to "make and preserve records containing adequate and proper documentation of the organization,

[2] With their motion to dismiss, Defendants disclosed FRA training materials ICE issued in February 2022—after Plaintiffs submitted their administrative complaint in this matter. *See* Tucker Decl. ¶ 6 & Ex. D, ECF No. 10-1. Based on these newly-disclosed materials, Plaintiffs agree that Count II of the Complaint, which challenges ICE's FRA guidelines and directives, no longer presents a justiciable Article III dispute and thus accede to dismissal without prejudice of that claim under Rule 12(b)(1). *See* Mot. at 19, ECF No. 10.

functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

NARA regulations require agencies to ensure appropriate preservation of federal records in the possession of contractors and other non-federal entities. "Agency officials responsible for administering contracts must safeguard records created, processed, or in the possession of a contractor or a non-Federal entity by," among other things, ensuring that (1) "contractors performing Federal government agency functions create and maintain records that document these activities," and (2) "[a]ll records created for Government use and delivered to, or under the legal control of, the Government [are] . . . managed in accordance with Federal law," including the FRA and its implementing regulations. 36 C.F.R. § 1222.32(a); *see also id.* § 1222.32(b).

Federal records cannot be destroyed without NARA's approval. *See* 44 U.S.C. § 3314; *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999). NARA can do so by approving either a schedule governing the disposition of specified agency records, *see* 44 U.S.C. § 3303a(a), or a general records schedule listing types of records held by multiple agencies, *id.* § 3303a(d).

"To prevent the unlawful destruction or removal of records, the FRA creates a 'system of administrative enforcement.'" *Am. Oversight*, 498 F. Supp. 3d at 148 (quoting *Armstrong I*, 924 F.2d at 284). If an agency head becomes aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," the agency head "shall notify the Archivist" and "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery" of

those records. 44 U.S.C. § 3106(a).[3] If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action . . . or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b); *see also id.* § 2905(a) (similarly requiring Archivist to "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and for other redress provided by law" and to directly "initiate an action for such recovery or other redress" if the agency head fails to do so).

Under NARA regulations, "[u]nlawful or accidental destruction (also called unauthorized destruction) means disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record (other than court-ordered disposal under § 1226.14(d) of this subchapter); and disposal of a record subject to a FOIA request, litigation hold, or any other hold requirement to retain the records." 36 C.F.R. § 1230.3(b). "The penalties for the unlawful or accidental removal, defacing, alteration, or destruction of Federal records or the attempt to do so, include a fine, imprisonment, or both." *Id.* § 1230.12 (citing 18 U.S.C. §§ 641, 2071).

The APA authorizes claims by private litigants to compel an agency head and the Archivist to initiate an enforcement action through the Attorney General to redress the unlawful destruction or removal of federal records. *See Judicial Watch*, 844 F.3d at 954; *Armstrong I*, 924

[3] This obligation applies to federal records in an agency's "legal custody," even if not in the agency's physical custody. *See* 36 C.F.R. §§ 1230.10(a), 1222.32.

F.2d at 294–96. As the D.C. Circuit held in *Armstrong I*, 44 U.S.C. § 3106 "leave[s] [the agency head and Archivist] *no* discretion to determine which cases to pursue" and instead "*requires* the agency head and Archivist to take enforcement action." 924 F.2d at 295. Thus, "if the agency head and the Archivist do not take the required 'action to prevent the unlawful destruction or removal of records' … , private litigants may sue under the APA to require them to do so.'" *Judicial Watch*, 844 F.3d at 954 (quoting *Armstrong I*, 924 F.2d at 296 n.12). This enforcement scheme reflects Congress's judgment that "marshalling the law enforcement authority of the United States [is] a key weapon in assuring record preservation and recovery." *Id.* at 956.

## II. Factual Background

The Complaint alleges as follows. In the spring of 2021, Glades released documents in response to a public records request revealing that the facility was deleting surveillance video every 90 days despite federal contractual requirements and directives to retain the video for longer periods. Compl. ¶ 41. The documents included a January 29, 2021 memo from ICE Enforcement and Removal Operations ("ERO") Acting Assistant Director for Field Operations to all ERO Field Office Directors and Deputy Field Office Directors, with the subject "Reminder: Detention Facility Data Request." *Id.* ¶ 42. The memo noted NARA had requested ICE "detention facility video surveillance data" as part of an "ICE retention policy working group." *Id.* It continued: "In furtherance of NARA's request and the working group's mission, [the Assistant Director for] Field Operations directs the [Areas of Responsibility] to notify all ERO detention facilities[] that no later than Tuesday, February 2, 2021, they are to retain **all** video surveillance data, as described in the December 2, 2020 Detention Facility Data Request broadcast[,] until further notice." *Id.*

On February 1, 2021, the Deputy Field Office Director for ERO's Miami Field Office forwarded ERO's January 29, 2021 preservation directive to several ICE officials, stating: "Please see Tasking below requiring us to notify all ERO detention facilities, that no later than Tuesday, February 2, 2021, they are to retain **all** video surveillance data in accordance with the National Archives and Records Administration." *Id.* ¶ 43. The email included excerpts from ICE detention facility contracts mandating facilities' compliance with federal records management statutes, regulations, and guidelines from NARA, and requiring preservation of all records "related to contract performance . . . for three years." *Id.*

An ICE contracting officer from ERO's Miami Field Office forwarded the email thread to two Glades officials, stating "Per the Field Office Director and ICE HQ I'm notifying you of the below directive regarding video retention data as per [NARA]. We need to know as soon as possible if your facility will have any issues in meeting this requirement." *Id.* ¶ 44. Glades Detention Operations Commander Chad Schipansky responded to the ICE official as follows:

> Just following up with you in reference to our conversation. We currently do not have anything set up that would retain that much information for that long of a period of time. Our capabilities are currently at 90 days retention of video records. In speaking with our IT person that would require an enormous amount of added hard drives at an astronomical cost. Some quick calculations would put the cost estimate at around 500 K.

*Id.*

On November 16, 2021, the ACLU of Florida sent Glades a Notice of Investigation and Request to Preserve Evidence. *Id.* ¶ 45. The letter notified Glades of an "ongoing investigation of complaints" at the facility regarding medical neglect, failure to provide medication, and the unwarranted use of force, and requested that Glades retain certain "video footage" and other

records from January 1, 2021 to the present. *Id.*

On November 18, 2021, the ACLU of Florida submitted a public records request to the Glades County Sheriff's Office and a FOIA request to ICE, seeking Glades's surveillance video footage from specified date ranges in 2020 and 2021. *Id.* ¶ 46.

On December 3, 2021, counsel from the ACLU of Florida appeared at Glades for a legal visit and had a discussion with Commander Schipansky. *Id.* ¶ 47. During that conversation, Schipansky stated unequivocally that Glades only maintains surveillance video for 90 days. *Id.* He did not describe any efforts to preserve the video for longer periods in accordance with the contractual requirement to preserve records relating to contract performance for three years, ICE's January 29, 2021 preservation directive, or the ACLU of Florida's pending FOIA, public records, and records preservation requests. *Id.*

Despite being aware of Glades's actions since at least February 2021, ERO's Miami Field Office did not report the matter to NARA or take any action to stop the facility from prematurely deleting surveillance video. *Id.* ¶ 48.

## III. Plaintiffs' Administrative Complaint and This Suit

On January 24, 2022, Plaintiffs submitted an administrative complaint to ICE and NARA seeking "'prompt remedial action' regarding Glades's ongoing deletion of surveillance video." Compl. ¶ 56. Among other things, Plaintiffs requested that "ICE and NARA comply with their nondiscretionary duties" under the FRA "to initiate an enforcement action through the Attorney General to recover surveillance video unlawfully deleted by Glades and to ensure proper retention of the video going forward." *Id.* Plaintiffs requested a response from ICE by March 10, 2022 to confirm these steps were taken. *Id.*

Following Plaintiffs' administrative complaint, Glades personnel twice confirmed that the facility was continuing to disregard federal record retention requirements. *Id.* ¶ 57. First, on January 27, 2022, a National Public Radio affiliate in southwest Florida reported that it contacted the Glades County Sheriff's Office seeking a comment on Plaintiffs' administrative complaint. *See* Cary Barbor, *Glades Detention Center accused of destroying video evidence*, WGCU, Jan. 27, 2022, https://perma.cc/F7P7-XLLV. When confronted with Plaintiffs' allegations, a Glades officer reportedly stated, "We keep our video to the State of Florida's standards … We are not mandated to keep it to federal government standards." *Id.* The officer incorrectly claimed that Glades is not subject to federal retention requirements even though it is an ICE contractor. *Id.*

Second, on February 17, 2022, Commander Schipansky from Glades emailed the ACLU of Florida several "questions for clarification" regarding its November 18, 2021 public records request for facility surveillance video. Compl. ¶ 59. In response to an item of the request seeking confirmation that Glades is preserving surveillance video footage in compliance with federal requirements, Commander Schipansky wrote that "[v]ideo retention is at 90 days." *Id.*

After Defendants failed to respond to Plaintiffs' administrative complaint, Plaintiffs instituted this action on April 25, 2022. Count I of the Complaint, Plaintiffs' only remaining claim, *see supra* n.2, asserts an APA claim challenging Defendants' violation of their mandatory FRA duties to initiate a DOJ enforcement action. As relief, Plaintiffs seek an order requiring Defendants to, among other things, "initiate an enforcement action through the Attorney General to address Glades's unlawful destruction of records." Compl., Prayer for Relief ¶ 4. Plaintiffs seek this relief both "to prevent the unlawful destruction of federal records and to recover records unlawfully destroyed" by Glades. Compl. ¶ 1; *see also id.* ¶¶ 7, 8, 18, 67, 68.

Defendants now move to dismiss Count I. *See* Mot. at 8–15, ECF No. 10. With their motion, Defendants filed a declaration of ICE Records Officer Daniel Tucker and supporting exhibits detailing Defendants' communications with each other and Glades about this case. *See* Tucker Decl., ECF No. 10-1. The declaration attaches an April 22, 2022 letter from Records Officer Tucker to NARA confirming that the "unauthorized deletion of records" did occur at Glades between at least "July 2020" and "September 2021." Tucker Decl., Ex. J. Mr. Tucker further confirmed "[t]here was a lack of awareness [at Glades] of the ICE records control schedule and litigation holds." *Id.*; *see also* Tucker Decl. ¶¶ 12, 14.

The Tucker declaration also attaches a May 19, 2022 letter from Mr. Tucker to Commander Schipansky notifying him of this suit and instructing Glades "to preserve all evidentiary/audio files in your possession, as well as any video/audio files that are subject to any current [FOIA] request." Tucker Decl., Ex. L. Mr. Tucker added that "Glades must take steps to preserve" any "video/audio files" that were improperly deleted. *Id.*

Commander Schipansky responded to Mr. Tucker's letter by email dated May 23, 2022. *Id.* He struck a defiant tone, stressing that he notified ICE ERO's Miami Field Office of Glades's video retention practices in his February 1, 2021 email (described above) and that "[t]here were no further communications in reference to this issue at any time after February 1, 2021." *Id.* He added, "Glades will not be compliant with any video retention requests outside of the preceding 90 days of the dated request for information" and that "[n]o information will be stored longer than that period of time, unless it was identified as of evidentiary value at the time of the incident." *Id.* He also failed to respond to ICE's request that Glades seek to preserve any video improperly deleted, and suggested Glades would not preserve video responsive to pending

records requests unless Glades itself identified the video as having evidentiary value "at the time of the incident." *Id.*

**LEGAL STANDARD**

Defendants move to dismiss Count I for lack of Article III standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The same standard applies to a Rule 12(b)(1) motion for lack of Article III standing. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In considering a motion under Rules 12(b)(1) or 12(b)(6), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [any] jurisdictional questions.'" *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

**ARGUMENT**

**I. Plaintiffs Have Article III Standing to Assert Count I.**

"To demonstrate standing, a plaintiff must show [1] that she has suffered an 'injury in fact' [2] that is 'fairly traceable' to the defendant's actions and [3] that is 'likely to be redressed' by the relief she seeks." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[A]t the pleading stage," a plaintiff is "required only to 'state a *plausible* claim' that each of the standing elements is present." *Id.* "For purposes of the standing inquiry," the Court must "assume [Plaintiffs] would succeed on the merits of [their] claim." *Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019). Standing is

assessed based "on the facts as they exist when the complaint is filed." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992).

Defendants do not dispute that the Complaint plausibly alleges an Article III injury fairly traceable to them.[4] They instead challenge redressability, claiming Plaintiffs have failed to allege a "substantial likelihood that referral to the Attorney General would lead to the recovery of deleted video recordings." Mot. at 11–15. But Defendants misstate Plaintiffs' pleading burden, disregard the redress actually sought in the Complaint, and prematurely seek a fact-based adjudication on the merits (prior to any opportunity for factual development) under the guise of Article III redressability.

**A. The Complaint Plausibly Alleges that Defendants' Initiation of the Requested DOJ Enforcement Action to Prevent the Destruction of Records and Restore Deleted Records Would Redress Plaintiffs' Injuries.**

To survive a motion to dismiss for lack of standing, a complaint's "general factual allegations" will suffice and the Court must "presum[e]" that the "general allegations embrace those specific facts that are necessary to support the claim." *Osborn v. Visa Inc.*, 797 F.3d 1057, 1063–64 (D.C. Cir. 2015) (quoting *Lujan*, 504 U.S. at 561). Here, Plaintiffs allege cognizable

---

[4] Nor could they: it is well-established that private litigants have Article III standing to assert APA-FRA claims concerning the unlawful destruction of records they are seeking, or intend to seek, through Freedom of Information Act ("FOIA") or other public records requests. *E.g.*, *CREW v. EOP*, 587 F. Supp. 2d 48, 57 (D.D.C. 2008); *CREW v. SEC*, 858 F. Supp. 2d 51, 60 (D.D.C. 2012); *Cause of Action*, 285 F. Supp. 3d at 205–209; *Pub. Citizen v. Carlin*, 2 F. Supp. 2d 1, 6 (D.D.C. 1997), *rev'd on other grounds*, 184 F.3d 900 (D.C. Cir. 1999); *Judicial Watch, Inc. v. FBI*, 2019 WL 4194501, at *7 (D.D.C. Sept. 4, 2019). Under this line of cases, Plaintiffs' allegations easily satisfy Article III's injury-in-fact and traceability prongs. *See, e.g.*, Compl. ¶¶ 11–12, 45–47, 67–68 (alleging that Glades has destroyed, and continues to destroy, federal records that the ACLU of Florida routinely seeks and is presently seeking through records requests that Glades has yet to fulfill; and further alleging that the records are subject to an evidence preservation request).

injuries arising from Glades's unlawful destruction of federal records and, as redress for those injuries, seek a court order compelling Defendants to initiate a DOJ enforcement action both "to prevent the unlawful destruction of federal records and to recover records unlawfully destroyed" by Glades. Compl. ¶ 1; *see also id.* ¶¶ 7, 8, 18, 67, 68. To the extent that Article III redressability depends on DOJ being able to "actually recover" deleted records from Glades, Mot. at 13, Plaintiffs' "general allegations" necessarily rest on the factual premise that the records are recoverable and thus "embrace those specific facts" insofar as they are "necessary to support" Plaintiffs' claim. *See Osborn*, 797 F.3d at 1063–64; *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020) ("The general allegation that [the defendants] conspired to suppress [the plaintiff's] audience and revenue, combined with [the plaintiff's] representations that its audience and revenue declined, suffices to establish standing."); *see also CREW v. SEC*, 858 F. Supp. 2d at 61 (CREW adequately alleged Article III redressability where it sought "order requiring [the] Archivist and agency head to ask the Attorney General to initiate legal action— . . . 'precisely the relief outlined in the FRA'") (quoting *CREW v. EOP*, 587 F. Supp. 2d at 62)).

Plaintiffs are not required to plead the specific technological means by which DOJ might be able to recover deleted records. *See Osborn*, 797 F.3d at 1065-66 ("A Rule 12(b)(1) motion [for lack of standing] … is not the occasion for evaluating … the empirical accuracy of a[] … theory"). Nor do Defendants cite any case granting early dismissal of an APA-FRA claim for failure to plead facts about the recoverability of deleted records.

In any event, the Complaint does not seek initiation of a DOJ enforcement action *solely* to recover "records that have already been deleted." Mot. 14 (erroneously arguing otherwise). The Complaint also seeks this relief "to *prevent* the unlawful destruction of federal records" at

Glades. Compl. ¶ 1 (emphasis added); *see also id.* ¶¶ 8, 67, 68; *id.*, Ex. A (Jan. 24, 2022 Admin. Compl.) at 8 (urging initiation of DOJ enforcement action to "ensure appropriate retention of surveillance video going forward"); Tucker Decl. ¶ 13 (acknowledging Plaintiffs sought to prevent "ongoing deletion of video" at Glades). This requested relief tracks the FRA's text, which mandates initiation of a DOJ enforcement action for record "recovery *or other redress*." 44 U.S.C. § 3106 (emphasis added); *see also id.* § 2905(a) (similarly referring to action for "recovery" or "other redress"); *infra* Part II.B (discussing these provisions). As Defendants concede, "prevention of future destruction" can be "sufficient redress under Article III." Mot. at 14. The Complaint expressly seeks such redress.

Defendants argue there is no "continued threat to the destruction of [federal] records" at Glades, selectively quoting the Complaint's allegation that "ICE is not *currently* detaining immigrants at Glades." *Id*. (quoting Compl. ¶ 40) (emphasis added). But as the rest of the quoted allegation states, ICE "has not terminated its contract with the facility and has left open the possibility of detaining immigrants there in the future." Compl. ¶ 40; *see also* Press Release, *ICE to close Etowah Detention Center,* ICE, Mar. 25, 2022, https://perma.cc/Z5SLV57Y (stating only that ICE "will limit the use" of Glades and contemplating "future use of the facility") (cited in Compl. ¶ 39). ICE's own correspondence with Glades reveals ongoing concerns about records preservation conveyed as recently as May of this year. *See* Tucker Decl., Ex. L. Glades's defiant response to ICE's inquiries, sent on May 23, 2022, only reinforces the need for a DOJ enforcement action. *See id.* (failing to respond to ICE's request that Glades seek to preserve any video improperly deleted, and suggesting Glades would not preserve video responsive to pending

records requests unless Glades itself identified the video as having evidentiary value "at the time of the incident").[5]

Moreover, standing is assessed based "on the facts as they exist when the complaint is filed." *Lujan*, 504 U.S. at 569 n.4; *see also Hardaway v. D.C. Hous. Auth.,* 843 F.3d 973, 977 (D.C. Cir. 2016) ("[T]he standing inquiry focuses on whether the plaintiff has demonstrated an injury 'at the outset of the litigation.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000)). Plaintiffs filed their Complaint on April 25, 2022, just a month after ICE announced it would "limit its use" of Glades. Compl. ¶ 39. And the Complaint alleges, and seeks relief to redress, "ongoing" records destruction. *Id.* ¶¶ 67, 68. Given the close proximity between ICE's announcement and the filing of this suit, there was undoubtedly a "continued threat to the destruction of [federal] records" at Glades when the Complaint was filed. *Cf.* Mot. at 14.

The Complaint plausibly alleges a substantial likelihood that Defendants' initiation of an enforcement action through the Attorney General—"the only relief provided by the Federal Records Act," *Judicial Watch*, 844 F.3d at 955—would redress Plaintiffs' asserted injuries.

### B. Defendants Are Prematurely Seeking a Fact-Based Adjudication on the Merits Under the Guise of Article III Redressability.

Defendants also dispute redressability by offering their own facts at the pleading stage. They point to language in the Tucker declaration stating that during a February 2022 site visit to

[5] Glades also detains federal inmates pursuant to a contract with the U.S. Marshals Service and is subject to the FRA's requirements in that capacity as well. *See* Intergovernmental Service Agreement Between U.S. Marshals Service and Glades, DROIGSA-07-001, https://perma.cc/FXB9-2GVC.

Glades, an unidentified Glades official told Mr. Tucker "that after 90 days, the [surveillance] videos are overwritten, and previous data is unretrievable, as recent surveillance data replaces the older surveillance data." Tucker Decl. ¶ 12. Citing this unattributed hearsay, Defendants declare any surveillance video unlawfully deleted by Glades is "permanently unrecoverable" and a DOJ enforcement action would thus be futile. Mot. at 13. This argument fails for several reasons.

For starters, Defendants are prematurely raising a "factual … challenge" to "the Court's jurisdiction" that "depends on information outside the pleadings" and is "inextricably intertwined with the merits of the case." *Am. Oversight*, 498 F. Supp. 3d at 155 (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992)). In *American Oversight*, Judge Moss rejected a similar Article III justiciability challenge to an APA-FRA claim, though framed in terms of ripeness rather than standing. As the court explained, the government's ripeness argument raised the question of "at what point the agency's duty to bring in the Attorney General under the FRA, 44 U.S.C. § 3106, kicks in"—a question that could either be "framed as going to ripeness" or "the merits of" the plaintiffs' APA claim under 5 U.S.C. § 706(1). *Id* at 156. Because the "facts required to answer the ripeness inquiry [were] the same facts required to answer the merits questions," the Court denied the government's motion to dismiss and deferred "judgment on the ripeness question until later in the litigation, once the parties have had an opportunity to develop the record with respect to both the Court's jurisdiction and the merits." *Id.*

The same rationale applies here. Defendants' justiciability challenge—based on their factual assertion that the deleted records are "permanently unrecoverable," Mot. at 13; Tucker Decl. ¶ 12—could just as easily go to the merits of Defendants' APA-FRA claim for unlawfully withheld or unreasonably delayed agency action under 5 U.S.C. § 706(1). Because the

jurisdictional facts at issue are "inextricably intertwined with the merits of the case," the Court should "defer its jurisdictional decision until the merits are heard." *Herbert*, 974 F.2d at 198. Proceeding otherwise would "short-circuit the factual development and adjudicative process to which a plaintiff is generally entitled." *Am. Oversight*, 498 F. Supp. 3d at 153.

Even if the Court were to consider Defendants' hearsay proffer,[6] it fails to show that this case presents no Article III case or controversy. Courts in this Circuit have rejected motions to dismiss FRA claims on Article III justiciability grounds where, as here, an agency insists at the outset of the case that all recovery efforts have been exhausted and any DOJ enforcement action would be futile. *See, e.g.*, *Judicial Watch*, 844 F.3d at 955–56 (rejecting mootness argument because, even though agencies undertook a "sustained [recovery] effort" that "yield[ed] a substantial harvest" missing records, evidence did not reveal "why shaking the tree harder—e.g., by following the statutory mandate to seek action by the Attorney General—might not bear more still"); *Cause of Action*, 285 F. Supp. 3d at 205–209 (rejecting Article III redressability argument for similar reasons and deeming *Judicial Watch's* mootness rationale "instructive" since "[b]oth mootness and standing involve the question of redressability"). As the D.C. Circuit explained in *Judicial Watch*, deeming an FRA case non-justiciable merely because the agency and Archivist "took *some* action to recover the missing record[s]" would "flip *Armstrong [I]* on its head and

---

[6] The Court should disregard the hearsay statement from the unidentified Glades official relayed in the Tucker declaration, *see* Tucker Decl. ¶ 12, for a "court cannot 'rely on conclusory or hearsay statements contained in the affidavits'" when "considering a motion to dismiss for lack of subject matter jurisdiction," *Welborn v. IRS*, 218 F. Supp. 3d 64, 80 (D.D.C. 2016). Alternatively, for the reasons that follow, the Court "can resolve the question of standing" in Plaintiffs' favor "without deciding whether to credit" the proffered hearsay statement. *Cause of Action*, 285 F. Supp. 3d at 208 n.6.

carve out enormous agency discretion" from the FRA's "mandatory enforcement provisions." 844 F.3d at 956. While *Armstrong I* "recognized that sometimes an agency might reasonably attempt to recover its records before running to the Attorney General," the Circuit has "never implied that where those initial efforts failed to recover all the missing records (or establish their fatal loss), the agency could simply ignore its referral duty." *Id.*

In *Cause of Action*, Judge McFadden rejected a redressability challenge nearly identical to the one raised here. *See* 285 F. Supp. 3d at 205–209. The plaintiff sued the State Department and Archivist for failing to initiate an FRA enforcement action to recover former Secretary of State Colin Powell's work-related emails from a personal account. *Id.* at 202. The government moved to dismiss for lack of redressability, citing "hearsay" statements relayed by "Secretary Powell's representative" that there were "no emails remaining in the [personal email] system from former Secretary Powell's tenure as Secretary of State." *Id.* The court denied the motion, finding a "'substantial likelihood' that referral to the Attorney General will yield access to at least some of Secretary Powell's emails." *Id.* at 206–209. The court cited "three related factors" supporting this conclusion, *id.*, each of which is likewise present here.

First, as in *Cause of Action*, there has been a clear "lack of effort" by Defendants to recover the records. *Id.* at 208. All Defendants have done is ask Glades if the records are recoverable and "then declare 'mission accomplished'" when an unidentified Glades employee told them they were not. *Id.* This lackluster attempt pales in comparison to the robust recovery efforts undertaken in the FRA cases cited by Defendants (Mot. at 12) that were ultimately dismissed as moot. *See Judicial Watch, Inc. v. Pompeo*, 744 F. App'x 3, 4–5 (D.C. Cir. 2018) (deeming case moot after extensive "investigative efforts by the State Department and the

FBI"—the "Attorney General's investigative arm"—which made clear "no imaginable enforcement action" by the Attorney General "could lead to recovery of" former Secretary of State Hillary Clinton's "missing emails"); *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 236 (D.D.C. 2018) (same, where government established "fatal loss" of federal records based on sworn statements of former Secretary of State Powell and the service provider for his personal email account).[7]

Second, Defendants underestimate the gravity of "bring[ing] the significant law enforcement authority of the Attorney General to bear" in this case. *Cause of Action*, 285 F. Supp. 3d at 208. "[T]here's a difference between kindly asking records custodians to help, and enlisting the Attorney General's coercive power"—a power DOJ has "demonstrated" in the FRA context through the use of "grand-jury subpoenas," witness "interviews," and even "search warrant[s]." *Id.* at 208–209. This case proves the point: Glades has "openly and repeatedly" defied federal record retention requirements, confirmed as much to the press, and resisted ICE records custodians' remedial efforts. *See* Compl. ¶¶ 3, 44, 47, 57–59; Tucker Decl., Ex. L. Enlisting the Attorney General's "coercive power" is substantially likely to preserve or restore records that Defendants' tepid efforts have failed to secure. And "Defendants' refusal to turn to

[7] Moreover, the ACLU of Florida requested some surveillance video from Glades within the facility's stated 90-day retention window. *See* Compl., Ex. A, Ex. 3 at 1–2 (Nov. 18, 2021 Public Records Request to Glades) (seeking certain surveillance video created within preceding 90 days); *id.*, Ex. 4 at 1–2 (Nov. 18, 2021 FOIA Request to ICE) (same). If Glades is in fact retaining video identified as having "evidentiary value" within 90 days of when the video is recorded, Tucker Decl., Ex. L, then at least this requested video should be recoverable without any need to restore deleted records.

the law enforcement authority of the Attorney General is particularly striking in the context of a statute with explicitly mandatory language." *Cause of Action*, 285 F. Supp. 3d at 209.

Third, "action by the Attorney General has yielded fruit before, even when the [records] at issue had been deleted." *Id.* (discussing FBI's forensic techniques used to recover former Secretary of State Clinton's emails). Thus, a "thorough investigation undertaken by the Attorney General might well yield fruit" with respect to deleted video records in this case. *Id.*

For all these reasons, Defendants cannot skirt their mandatory FRA duties on purported justiciability grounds through premature, fact-bound assertions that the records at issue are "permanently unrecoverable." Plaintiffs have plausibly alleged Article III standing.

## II. Count I States a Valid APA-FRA Claim Based on Defendants' Violation of Their Nondiscretionary Duties to Initiate a DOJ Enforcement Action to Redress Glades's Unlawful Destruction of Records.

Defendants also move to dismiss Count I for failure to state a claim, incorrectly arguing that the FRA only requires an agency head and NARA to initiate a DOJ enforcement action when federal records have been "unlawfully removed" from an agency's custody—not when records "have been deleted or otherwise destroyed." Mot. 9–11. In Defendants' view, private parties lack any cause of action to compel initiation of a DOJ enforcement action to redress the unlawful destruction of federal records—even where, as here, the complaint alleges ongoing destruction that the agency head and NARA have failed to remediate. This argument is foreclosed by binding precedent, the FRA's text and legislative history, and NARA's own directive implementing 44 U.S.C. § 3106.

### A. D.C. Circuit Precedent Forecloses Defendants' Argument.

In *Armstrong I*, the Circuit held that "if the agency head or Archivist does nothing while

an agency official *destroys* or removes records in contravention of agency guidelines and directives, private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to notify Congress and ask the Attorney General to initiate legal action." 924 F.2d at 295 (emphasis added); *see also id.* at 296 n.12 ("We emphasize the mandatory statutory language because it indicates that the agency head and Archivist are required to take action to prevent the *unlawful destruction* or removal of records and, if they do not, private litigants may sue under the APA to require them to do so.") (emphasis added); *id.* at 296 ("On the basis of such clear statutory language mandating that the agency head and Archivist seek redress for the unlawful removal or *destruction* of records, we hold that the agency head's and Archivist's enforcement actions are subject to judicial review.") (emphasis added). Contrary to Defendants' suggestion, this was holding, not dicta, as *Armstrong I* concerned whether the FRA required the defendants in that case "to request that the Attorney General initiate an action to prevent [agency] staff from destroying records." *Id.* at 295 n.10.

Subsequent authority confirms this reading. *See, e.g.*, *Judicial Watch*, 844 F.3d at 954 ("*Armstrong [I]* involved a threatened destruction of records, so we framed the case in those terms."); *Armstrong v. EOP ("Armstrong II")*, 1 F.3d 1274, 1279 (D.C. Cir. 1993) (noting *Armstrong I* authorized APA-FRA claims based on the "destr[uction]" of "records"); *CREW v. DHS*, 527 F. Supp. 2d 101, 111 (D.D.C. 2007) (recognizing that APA authorizes claim compelling agency head and Archivist to "take enforcement action to prevent an agency official from improperly destroying records"); *CREW v. EOP*, 587 F. Supp. 2d at 56–57 (same, denying dismissal of claim "to compel the Archivist" and other agencies "to initiate action through the attorney general to restore … deleted e-mails").

The Circuit has further recognized that private APA-FRA suits to redress the unlawful destruction of records directly advance Congress's goal of "marshalling the law enforcement authority of the United States" as "a key weapon in assuring *record preservation* and recovery." *Judicial Watch*, 844 F.3d at 956 (emphasis added). "[J]udicial review of the … failure to take enforcement action reinforces the FRA scheme by ensuring that the administrative enforcement and congressional oversight provisions will operate as Congress intended" because, unless the "administrative enforcement and congressional oversight provisions" are "triggered," there "will be no effective way to *prevent the destruction* or removal of records." *Armstrong I*, 924 F.2d at 295 (emphasis added); *see also Judicial Watch*, 844 F.3d at 956 ("[T]he entire enforcement scheme assumes that the agency head (or Archivist) will actually refer cases to the Attorney General—as the statute requires—and … if he does not 'there will be no effective way to prevent the destruction or removal of records.'" (quoting *Armstrong I*, 924 F.2d at 295)).

*Armstrong I* and its progeny thus make abundantly clear that the FRA imposes nondiscretionary duties on Defendants to initiate a DOJ enforcement action to redress *either* the unlawful destruction *or* removal of records. This precedent authorizes Plaintiffs' claim to compel Defendants to initiate a DOJ enforcement action "to prevent the unlawful destruction of federal records and to recover records unlawfully destroyed" by Glades. Compl. ¶ 1. That should be the end of the matter.

### B. Defendants' Duty to Initiate a DOJ Enforcement Action for "Other Redress" Encompasses Redress for the Unlawful Destruction of Federal Records.

Even if this Court were free to disregard binding precedent and interpret the FRA anew, Defendants' reading does not withstand scrutiny. While they focus on a single section of the

FRA, 44 U.S.C. § 3106, *see* Mot. at 9–11, it "is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *Gundy v. United States*, 139 S. Ct. 2116, 2126 (2019). "[S]tatutory interpretation" is a "'holistic endeavor' which determines meaning by looking not to isolated words, but to text in context, along with purpose and history." *Id.*

Applying this "fundamental canon," the Court should start with the FRA's statement of purpose. *See id.* (starting statutory analysis by examining "[d]eclaration of purpose" in statute's first sentence). This is found in 44 U.S.C. § 2902, titled "Objectives of records management," which declares it is "the purpose of this chapter, and chapters 21, 31, and 33 of this title, to require the establishment of standards and procedures to assure efficient and effective records management." *Id.* It then lists several "goals," the very first of which is "[a]ccurate and *complete* documentation of the policies and transactions of the Federal Government." *Id.* § 2902(1) (emphasis added).

The FRA's goal of "complete documentation" is achieved through the statute's preservation and recovery provisions. *See, e.g.*, *id.* § 3101 ("The head of each Federal agency shall make and preserve records …"); *id.* § 3105 ("The head of each Federal agency shall establish safeguards against the removal or loss of records," including by "making it known to officials and employees of the agency—(1) that records in the custody of the agency are not to be alienated or destroyed except in accordance with sections 3301–3314 of this title, and (2) the penalties provided by law for the unlawful removal or destruction of records."); *id.* § 3106 (outlining procedures for "Unlawful removal, destruction of records"); *id.* § 2905 ("Establishment of standards for selective retention of records; security measures"). While these

provisions create safeguards against both the "removal" of records from agency custody and the "destruction" or "loss" of records, nothing in the statute suggests an intent to create *stronger* safeguards for removal than for destruction. Rather, the safeguards against both removal and destruction serve the same goal of preserving the "complete documentation of the policies and transactions of the Federal Government." *Id.* § 2902(1).

Consistent with this understanding, § 3106 mandates initiation of a DOJ enforcement action for record "recovery" *or* for "other redress" to address "any" of the "unlawful action[s]" identified in § 3106(a). *See* 44 U.S.C. § 3106(b) (If the "head of a Federal agency does not initiate a[] [DOJ enforcement] action *for such recovery or other redress* within a reasonable period of time after being notified of *any such unlawful action described in subsection (a)*, … the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made.") (emphasis added); *id.* § 3106(a) (listing the following unlawful actions: "unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency"). An enforcement action for record "recovery" plausibly refers to an action to recover records unlawfully "removed" from an agency's custody. But what about an enforcement action for "other redress"? When viewed in context of § 3106 and the entire statutory scheme, this catchall language logically refers to a DOJ enforcement action to redress the various *other* "unlawful action[s]" identified in § 3106(a)—*i.e.*, "unlawful … defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency." *Id.* § 3106(a).

This reading is reinforced by a parallel FRA provision, § 2905(a), requiring the Archivist (1) to "notify the head of a Federal agency of any actual, impending, or threatened unlawful

removal, defacing, alteration, or destruction of records in the custody of the agency that shall come to the Archivist's attention"; (2) to "assist the head of the agency in initiating action through the Attorney General for the recovery of records unlawfully removed and *for other redress provided by law*"; and (3) if the agency head fails to "initiate an action for such recovery *or other redress* within a reasonable period of time after being notified of *any such unlawful action*," to directly "request the Attorney General to initiate such an action" *Id.* (emphasis added). Thus, similar to § 3106, § 2905(a) refers to a DOJ enforcement action "for the recovery of records unlawfully removed" *or* for "other redress" to address "any" of the "unlawful action[s]" listed in that provision. Since § 2905(a) ties the remedy of "recovery" to "records unlawfully removed," the term "other redress" naturally refers to the other "unlawful action[s]" listed in the provision—*i.e.*, "defacing, alteration, or destruction of records."

Defendants' contrary reading fails to give independent meaning to the words "other redress" in § 3106 and § 2905, instead rendering that language mere surplusage. *See* Mot. at 9–11; *Torres v. Lynch*, 578 U.S. 452, 463 n.8 (2016) ("[O]ur ordinary assumption [is] that Congress, when drafting a statute, gives each provision independent meaning."). Defendants' reading also leads to the illogical result—in conflict with the statutory text and purpose—that the FRA creates stronger safeguards for record removal than for record destruction.

The legislative history confirms Plaintiffs' reading. In amending the statute in 1984, "Congress recognized that the FRA administrative enforcement mechanism needed to be strengthened '[b]ecause of the frequency of incidents of *removal or destruction* of records in recent years.'" *Armstrong I*, 924 F.2d at 294 (quoting H.R. Conf. Rep. No. 98-1124 at 28) (emphasis added). Congress thus "enhanced the Archivist's authority to prevent the unlawful

*removal or destruction* of records by requiring the Archivist to notify Congress and independently request that the Attorney General initiate an action if the agency head refused to do so." *Id.* (citing H.R. Conf. Rep. No. 98-1124 at 27) (emphasis added). This indicates Congress was equally concerned with unlawful removal and destruction, and did not intend to create greater safeguards against removal.

Plaintiffs' reading is further supported by NARA's own directive implementing 44 U.S.C. § 3106 and § 2905. *See* NARA Directive 1463, *Unauthorized Destruction or Removal of Records in the Legal or Physical Custody of Federal Agencies*, Dec. 20, 2016, https://perma.cc/89LC-AJJB. The directive states unequivocally that

> [u]nder 44 U.S.C. 2905 and 3106, if the head of the agency does not initiate action for recovery or other redress for the records within a reasonable time of being notified of the *unlawful destruction* or removal, *the Archivist has the responsibility to request that the Attorney General initiate action for recovery or other redress, and to notify Congress when such a request has been made.*

*Id.* § 1463.4.a (emphasis added). The transmittal memo for the directive—authored by Defendant Acting Archivist Wall—similarly discusses the obligations imposed by § 3106 and § 2905 without distinguishing between record destruction and removal. *See* Transmittal Memo for NARA Directive 1463, at 1, Dec. 20, 2016, https://perma.cc/89LC-AJJB. Thus, NARA's current litigation position is refuted by its own official policy interpreting § 3106 and § 2905.

The district court case on which Defendants rely, *CREW v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013), does not change the analysis. For one thing, the case is inapposite because it only concerned "already-destroyed documents" and not a claim "to prevent the future destruction of records." *Id.* at 147–48; *compare* Compl. ¶ 1. More fundamentally, the court's reasoning has the

same flaws as Defendants': it conflicts with Circuit precedent (and indeed predated *Judicial Watch*, 844 F.3d at 954), it wholly disregards the "other redress" language in § 3106(b) and § 2905(a), and it construed § 3106 "in a vacuum" without considering its "context" within "the overall statutory scheme" or the statute's "purpose and history." *Gundy*, 139 S. Ct. at 2126.

Plaintiffs have plausibly alleged a valid APA-FRA claim under *Armstrong I* and its progeny to compel initiation of a DOJ enforcement action "to prevent the unlawful destruction of federal records and to recover records unlawfully destroyed." Compl. ¶ 1.

## CONCLUSION

Defendants' motion to dismiss Count I of the Complaint should be denied.

Dated: July 25, 2022

Respectfully submitted,

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and
Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org

Katherine H. Blankenship (FL Bar No.
1031234)
Daniel B. Tilley (FL Bar No. 102882)
ACLU Foundation of Florida, Inc.
4343 W. Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2700
kblankenship@aclufl.org
Dtilley@aclufl.org
**pro hac vice*

Amien Kacou (FL Bar No. 44302)
ACLU Foundation of Florida, Inc.
4023 N. Armenia Avenue, Suite 450
Tampa, FL 33607
Tel: (813) 288-8390
akacou@aclufl.org
*pro hac vice*

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union Foundation
of the District of Columbia
915 15th Street, NW, 2nd floor
Washington, DC 20005
Tel: (202) 601-4266
aspitzer@acludc.org

*Counsel for Plaintiffs*